IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| BETTY GRENEKER and<br>GREGORY GRENEKER,<br>JOSH GRUNDNER and<br>CAROLINE GRUNDNER,<br>YAZMIN ROMAN and<br>RICARDO ROMAN-VAZQUEZ,<br>JENIFER CAMPBELL and<br>VICKAL CAMPBELL,<br>ROSEMARY PASTULA and<br>JOHN PASTULA, and<br>ANTHONY SNYDER,<br><br>     Plaintiffs,<br><br>v.<br><br>DR HORTON, INC., and<br>UPONOR, INC.<br><br>     Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION FILE NO.:<br><br>4:24-cv-00283-WMR |

**DEFENDANT'S BRIEF IN SUPPORT OF MOTION
TO DISMISS AND TO COMPEL ARBITRATION**

COMES NOW DR Horton, Inc., a defendant in this lawsuit ("Defendant"), and files this *Motion to Dismiss and to Compel Arbitration and Brief in Support Thereof*, respectfully showing the Court as follows:

**I.     INTRODUCTION**

In this case, Plaintiffs all purchased homes in Dallas, Georgia built by Defendant DR Horton, Inc. Each home was purchased pursuant to separate Home Purchase Agreements entered into by DR Horton and the Plaintiffs. The homes were

constructed using plumbing pipes manufactured by Defendant Uponor, Inc. Plaintiffs allege that the Uponor pipes "are prematurely degrading, deteriorating and/or failing," and that pipes have burst in all of Plaintiffs' homes, causing numerous leaks and significant water damage.

Plaintiffs assert several causes of action based on strict liability, negligence, breach of implied warranty of merchantability, and others. Among other things, Plaintiffs complaint states that "Defendants knowingly and actively concealed and failed to disclose to Plaintiffs the defective nature of Uponor Pipes used in the construction of Plaintiffs' Homes."

According to the Home Purchase Agreements, Plaintiffs agreed that any claims related to the construction of the homes would be brought and decided **only** through binding arbitration. Such arbitration provisions are binding and enforceable under Georgia law. Accordingly, Defendant is entitled to an Order dismissing this action and requiring Plaintiffs to submit any claims to binding arbitration as provided in each party's Home Purchase Agreement.

## II.     STATEMENT OF FACTS

Plaintiffs each entered into a Home Purchase Agreement ("Agreement") whereby Defendant promised to provide services to Plaintiffs related to the purchase of residential property. (The six Home Purchase Agreements are attached hereto as Exhibits A – F). The Agreement includes an arbitration clause wherein Plaintiffs

waive their right to a trial and agree to resolve any dispute through arbitration.  The

Agreement reads in relevant part as follows:

b. **ARBITRATION.** PURCHASER AND SELLER SHALL SUBMIT TO BINDING ARBITRATION IN ACCORDANCE WITH O.C.G.A § 9-9-1 *et seq.* ANY CONSTRUCTION DEFECT NOT RESOLVED AFTER FOLLOWING THE PROCEDURE DESCRIBED IN O.C.G.A § 8-2-35 *et seq* AND ANY AND ALL OTHER DISPUTES WHICH MAY ARISE BETWEEN THEM REGARDING THIS AGREEMENT AND/OR THE PROPERTY, INCLUDING BUT NOT LIMITED TO ANY DISPUTES REGARDING: (A) SELLER'S CONSTRUCTION AND DELIVERY OF THE HOME; (B) SELLER'S PERFORMANCE UNDER ANY PUNCH LIST OR INSPECTION AGREEMENT; AND (C) THE LIMITED WARRANTY PURSUANT TO SECTION 14 ABOVE. THE ARBITRATION SHALL TAKE PLACE IN THE COUNTY IN WHICH THE PROPERTY IS LOCATED. THE PROCEEDING SHALL BE CONDUCTED PURSUANT TO THE RULES OF THE AMERICAN ARBITRATION ASSOCIATION, AND TO THE EXTENT POSSIBLE, UNDER RULES WHICH PROVIDE FOR AN EXPEDITED HEARING. THE FILING FEE FOR THE ARBITRATION SHALL BE PAID BY THE PARTY FILING THE ARBITRATION DEMAND, BUT THE ARBITRATOR SHALL HAVE THE RIGHT TO ASSESS OR ALLOCATE THE FILING FEES AND ANY OTHER COSTS OF THE ARBITRATION AS A PART OF THE ARBITRATOR'S FINAL ORDER. THE ARBITRATION SHALL BE BINDING AND FINAL, AND EITHER PARTY SHALL HAVE THE RIGHT TO SEEK JUDICIAL ENFORCEMENT OF THE ARBITRATION AWARD. NOTWITHSTANDING ANY OTHER PROVISION HEREIN, ANY DISPUTES ARISING UNDER THE LIMITED WARRANTY SHALL BE MEDIATED, ARBITRATED AND/OR JUDICIALLY RESOLVED PURSUANT TO THE TERMS, CONDITIONS, PROCEDURES AND RULES OF THAT WARRANTY PROGRAM. NOTWITHSTANDING THE FOREGOING, SELLER SHALL HAVE THE RIGHT TO INTERPLEAD ALL OR ANY PART OF THE EARNEST MONEY INTO A COURT OF COMPETENT JURISDICTION AS PROVIDED FOR IN SECTION 4 HEREIN. ALL ARBITRATION HEARINGS WILL BE COMMENCED WITHIN NINETY (90) DAYS OF THE DEMAND FOR ARBITRATION. NOTWITHSTANDING THE FOREGOING, THE ARBITRATION PROVISIONS OF THIS SUBSECTION (B) SHALL NOT APPLY IN THE EVENT THAT THE DISPUTE RELATES TO A DEFAULT BY THE SELLER UNDER SECTION 16(F) OF THIS AGREEMENT.

Despite the arbitration clause in each Plaintiff's Home Purchase Agreement,

on October 15, 2024, Plaintiffs filed the instant lawsuit. By filing suit against

Defendant, Plaintiffs have violated the terms of the Agreement with respect to the

arbitration clause.  Furthermore, as Plaintiff agreed to submit any claims against

Defendant only to binding arbitration, this Court lacks subject-matter jurisdiction

over the claims asserted in Plaintiffs' Complaint. Defendant now seeks to enforce

the Agreement and compel Plaintiffs to resolve their claims through binding

arbitration conducted pursuant to the rules of the American Arbitration Association.

### III.   ARGUMENT AND CITATION OF AUTHORITY

### A. The Federal Arbitration Act (FAA)

The FAA represented a landmark shift in American policy concerning agreements to arbitrate. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 625-26, 105 S.Ct. 3346, 3354 (1985).[1] The United States Supreme Court has explained the FAA this way:

> The United States Arbitration Act, now 9 U.S.C.S. 1, et seq., reversing centuries of judicial hostility to arbitration agreements, was designed to allow parties to avoid 'the costliness and delays of litigation', and to place arbitration agreements 'upon the same footing as other contracts....' *Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 510-11, 94 S.Ct. 2449, 2453 (1974) citing H.R.Rep.No.96, 68th Cong., 1st Sess., 1, 2 (1924); See also S.Rep.No.536, 68th Cong., 1st Sess. (1924); *Volt Info Sys., Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.,* 489 U.S. 468, 474 (1 989)(the FAA was designed "to overrule the judiciary's long standing refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts"); *Stone v. Doerge,* 328 F.3d 343 (7th Cir. 2003); and *Pritzke v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 7 F.3d 1110 (3rd Cir. 1993).

The High Court has further explained that the FAA manifests a liberal federal policy favoring arbitration, the purpose of which is to ensure rigorous enforcement of agreements to arbitrate:

> The 'liberal federal policy favoring arbitration agreements,' *Moses H Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1,

---

[1] The FAA was designed to overcome an anachronistic judicial hostility to agreements to arbitrate, which American courts borrowed from English common law.

24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983), manifested by this provision and the Act as a whole, is at bottom a policy guaranteeing the enforcement of private contractual arrangements: the Act simply 'creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate.' *Id.* at 25, n.32, 103 S.Ct., at 942, n.32. As this Court recently observed, '[t]he preeminent concern of Congress in passing the Act was to enforce private agreements into which parties had entered,' a concern which 'requires that we rigorously enforce agreements to arbitrate.' *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 625-26, 105 S.Ct. 3346, 3354 (1985) citing *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213,221, 105 S.Ct. 1238, 1242, 84 L.Ed.2d 158 (1985).

Accordingly, courts must resolve any doubts about arbitrability in favor of arbitration. *Doctor's Associates, Inc. v. Casarotto,* 517 U.S. 681,686 116 S.Ct. 1652, 1656 (1995).[2] Even further, Section 2 of the FAA is interpreted to create a presumption of arbitrability in all cases controlled by the FAA. *Wright v. Universal Maritime Service Corp.,* 525 U.S. 70, 78 ("We have also discerned a presumption of arbitrability under the FAA..."), see also, *Harris v. Green Tree Financial Corp.,* 183

---

[2] See also, *Allied-Bruce Terminix Companies, Inc. v. Dobson,* 513 U.S. 265, 115 S.Ct. 834, 843 (I 995); *Ferro Corp. v. Garrison Industries, Inc.,* 142 F.3d 926, 932 (6th Cir. 1998) (where the court was "mindful of the Supreme Court's teaching that' [t]he Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself, or an allegation of waiver, delay or a like defense to arbitrability."'); *Rodriguez de Quijas v. Shearson/Am. Exp., Inc.,* 490 U.S. 477, 109 S.Ct. 1917 (1989); *ADC Construction Company v. McDaniel Grading, Inc.,* 177 Ga. App. 223, 338 S.E.2d 733 (1985).

F.3d 173, 178 (3rd Cir. 1999). Accordingly, "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Financial Corp. - Alabama v. Randolph,* 531 U.S. 79, 92, 121 S.Ct. 513, 522 (2000), *Morrison Circuit City Stores, Inc.,* 317 F.3d 646, 659 (6th Cir. 2003). Thus, in the case at bar, Plaintiffs have the burden of establishing that their claims are not subject to arbitration.

## B. The FAA supersedes and preempts state law

The core of the FAA, providing the legal foundation for arbitration, lies in Section 2 of the Act,[3] as follows:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. 9 U.S.C. §2.

---

[3] In *Moses H. Cone Memorial Hospital v. Mercury Const. Corp.,* 460 U.S. I, 24, I 03 S.Ct. 927, 941 (I 983) the Court held that Section 2 is "…the primary substantive provision of the Act…"

The FAA's statutory mandate concerning arbitrability of claims rests upon the congressional authority granted by the Commerce Clause of the federal constitution to regulate commerce. *Southland Corp. v. Keating,* 4654 U.S. 1, 11, 104 S.Ct.852, 858 (1984). Thus, where it applies, the FAA binds both federal and state courts. *Moses H Cone Memorial Hospital v. Mercury Const. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927,941 (1983).[4] This is because as federal law, through the Supremacy Clause of the federal constitution, the FAA supersedes and preempts state law.[5] In *Perry v. Thomas,* 482 U.S. 483, 492, 107 S.Ct. 2520, 2527, (1987), the United States Supreme Court stated:

> Congress intended to foreclose state legislative attempts to undercut the enforceability of arbitration agreements. *Id*. at 16, 104 S.Ct. 861 (footnote omitted). Section 2, therefore, embodies a **clear federal policy of requiring arbitration unless the agreement to arbitrate is not part of a contract evidencing interstate commerce or is revocable "upon such grounds as exist at law or in equity for the revocation of any contract."** 9 U.S.C. § 2. "We see nothing in the Act indicating that the broad principle of enforceability is subject to any

---

[4] See also, *Southland Corp.,* 465 U.S. at 12, 104 S.Ct. at 859, *Allied-Bruce Terminix Companies, inc. v. Dobson,* 513 U.S. 265, 272-73, 115 S.Ct. 834,839 (1995), *Lovev. Money Tree, Inc.,* 279 Ga. 476,479,614 S.E.2d 47 (2005).

[5] The United States Constitution provides that "[t)his Constitution, and the Laws of the United States which shall be made in pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the land; and the Judges in every State shall be bound thereby, anything in the Constitution or Laws of any State to the Contrary notwithstanding."

additional limitations under state law." *Keating,* supra, at 11, 104 S.Ct., 858. *Perry,* 482 U.S. at 489-90.[6] (emphasis added).

"In this way, the Supreme Court does not allow state courts to single out arbitration provisions for suspect status and 'invalidate arbitration agreements under state laws applicable only to arbitration provisions.'" *Vicksburg Partners, L.P. v. Angela Stephens,* In the Supreme Court of Mississippi, No. 2004-CA-0 1345-SCT, decided September 22, 2005 *citing Doctor's Associates, Inc. v. Casarotto,* 517 U.S. 681, 687. Therefore, state law must yield to the FAA "[w]here the transactions out of which the claim for arbitration arose involve 'commerce' within the meaning of 9 U.S.C. § 1 of the Federal Arbitration Act." *ADC Construction Company v. McDaniel Grading, Inc.,* 177 Ga. App. 223,338 S.E.2d 733, 735 (1985) *citing Hilton Constr. Co. v. Martin Mechanical Contractors,* 251 Ga. 701, 702 (308 SE2d 830 (1983), *see also, McKinght v. Chicago Title Ins. Co.,* 358 F.3d 854, 857 (11th Cir. 2004), *Love v. Money Tree, Inc.,* 279 Ga. 476, 479, 614 S.E.2d 47 (2005), *Volt Info. Sys., Inc. v. Ed. of Trustees of the Leland Stanford Jr. Univ.,* 489 U.S. 468,478, 109 S.Ct. 1248, 1255 (1989).

## C. The Arbitration Agreement is part of a contract evidencing transactions in interstate commerce

---

[6] See also, *McKinght v. Chicago Title Ins. Co.,* 358 F.3d 854,857 (I 1th Cir. 2004); *Love v. Money Tree, Inc.,* 279 Ga. 476,479,614 S.E.2d 47 (2005); *Volt Info. Sys., Inc. v. Bd. a/Trustees of the Leland Stanford Jr. Univ.,* 489 U.S. 468,478, 109 S.Ct. 1248, 1255 (1989).

"Commerce," within the meaning of the FAA, means interstate commerce, and the determination of whether a contract evidences transactions in interstate commerce is a question on which federal rules of contract construction and interpretation govern. *ADC Construction Company v. McDaniel Grading, Inc.,* 177 Ga. App. 223,338 S.E.2d 733, 735 (1985).

As indicated by the literal terms of the FAA, a prerequisite to the enforceability of an arbitration agreement is that it bears a sufficient nexus to interstate commerce. *Citizens Bank v. Alafabco, Inc.,* 539 U.S. 52, 53, 123 S.Ct. 2037, 2038 (2003). As noted by the United States Court of Appeals for the Fifth Circuit, "this is not a rigorous inquiry" because the threshold for satisfaction of the interstate-commerce requirement is relatively low. *Trans Chemical Ltd. v. China Nat. Machinery Import and Export Corp.,* 161 F.3d 314, 319 (5th Cir. 1998), citing, *In re Arbitration Between: Trans Chemical Ltd. & China National Machinery Import & Expert Corp.,* 978 F.Supp. 266, 300 (S.D.Tex. 1997). Indeed, as the United States Supreme Court held, the statutory touchstone - that the transaction "involve commerce" - signifies a congressional intent to give the FAA a very wide reach, extending the scope of its coverage to the fullest extent of authority granted by the Commerce Clause. *Allied-Bruce Terminix Companies, Inc.,* 513 U.S. at 274, 115 S.Ct. at 839-840, *Citizens Bank,* 539 U.S. at 56, 123 S.Ct. at 2040 ("Because the statute provides for the enforcement of arbitration agreements within the full reach of the Commerce Clause ... it is perfectly clear that the FAA encompasses a wider

9

range of transactions than those actually 'in commerce' - that is, 'within the flow of interstate commerce ....'"). The Court in *Citizens Bank* explained that "Congress' Commerce Clause power 'may be exercised in individual cases without showing any specific effect upon interstate commerce' if in the aggregate the economic activity in question would represent 'a general practice ... subject to federal control.' Only that general practice need bear on interstate commerce in a substantial way." *Citizens Bank,* 539 U.S. at 56-57, 123 S.Ct. at 2040.

In the instant case, as indicated above, the Home Purchase Agreement related to homes built by Defendant in Dallas, Georgia. Defendant's principal place of business is located in Arlington, Texas, and it is fair to say that materials used in the construction of Plaintiffs' homes came from all parts of the United States. Therefore, the FAA applies because this transaction clearly involved interstate commerce. Moreover, to the extent Plaintiffs argue that the Georgia Arbitration Code ("GAC") excludes the home sale transactions from mandatory arbitration as involving a consumer good, or consumer transaction, Plaintiffs argument is without merit. In *Fleming v. Serv. Corp. Int'l*, the U.S. District Court for the Northern District of Georgia "conclude[d] that to the extent the GAC precludes arbitration of these claims, the GAC is preempted by the FAA." *Fleming v. Serv. Corp. Int'l*, 2005 U.S. Dist. LEXIS 57762, at *10.

**D. The Arbitration Provision is Legally Binding**

The issue of arbitration is a matter of contract, and thus, an arbitration clause is subject to the ordinary rules of contract interpretation. *South Point Retail Partners v. North American Properties Atlanta*, 304 Ga. App. 419, 422 (2010). The cardinal rule of interpreting a contract is to ascertain the intent of the parties, as reflected in the language of the contract. *Miller v. GGNSC Atlanta*, 323 Ga. App. 114, 119-20 (2013). Plaintiffs voluntarily entered into the Agreement containing clear and unambiguous language requiring disputes to be resolved through arbitration. Each Plaintiff agreed to such provision evidenced by their signatures on the Agreement.

Likewise, "[u]nder the FAA, an arbitration provision **shall be** valid, irrevocable, and enforceable." *Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 532-33 (2012) (internal quotation omitted; emphasis added). The FAA has "substantive supremacy," but requires an independent jurisdictional basis for access to a federal forum, such that "state courts have a prominent role to play as enforcers of agreements to arbitrate." *Vaden v. Discover Bank*, 556 U. S. 49, 59 (2009). The stated purpose of the FAA is to overcome "judicial hostility to arbitration" and to declare a nationwide policy favoring enforcement of arbitration agreements in both federal and state courts. *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 97-98 (2012). The FAA codified "liberal federal policy favoring arbitration agreements," and with it a "broad principle of enforceability . . ." *Primerica Fin. Servs. v. Wise*, 217 Ga. App. 36, 41 (1995). In keeping with our national policy and principles, state trial courts must serve as enforcers of arbitration agreements under the FAA. *Nitro-*

*Lift Technologies, L.L.C. v. Howard*, 568 U.S. 17, 19-21 (2012); *KPMG LLP v. Cocchi*, 565 U.S. 18, 21-22 (2011).

### IV.    CONCLUSION

O.C.G.A. § 9-9-6(a) provides Defendant with the right to seek an order compelling arbitration. There is no substantial issue raised concerning the validity of the Agreement, including the provision to submit the dispute to arbitration. As Plaintiffs agreed that the specific claims asserted against Defendant in this action would be resolved only through binding arbitration, there are no claims to be resolved by this Court, and Plaintiffs' suit is in violation of the binding Agreement they entered with Defendant. The Georgia Court of Appeals has recognized that dismissal of a lawsuit filed by a plaintiff is appropriate under these circumstances. *See Wedemeyer v. Gulfstream Aero. Corp.,* 324 Ga. App. 47 (2013).

Here, the Home Purchase Agreement explicitly requires Plaintiffs to resolve their claims via arbitration and Defendant respectfully requests that the Agreement be enforced. Nothing remains to be decided in this case outside arbitration, and Plaintiffs' Complaint should be dismissed in its entirety, and the Court should issue an order compelling them to initiate arbitration to resolve this dispute.

Plaintiffs signed the Agreement in consideration for Defendant's real estate broker services.  In entering into this valid, effective, and enforceable agreement, Plaintiffs waived their right to bring this suit with respect to any claims arising out of or relating to the Agreement or any actions or inactions of any party to the

Agreement.  By its express terms, the Agreement requires Plaintiffs to resolve their claims through binding arbitration.  Accordingly, Defendant respectfully requests that the Court grant its Motion to Dismiss and to Compel Arbitration and dismiss Plaintiffs' case whereupon Plaintiffs may proceed, if they choose, through arbitration.

Respectfully submitted this 4th day of December, 2024.

HAWKINS PARNELL & YOUNG LLP

/s/ Matthew Barr
Debra LeVorse
Georgia Bar No. 242229
Matthew Barr
Georgia Bar No. 039481

303 Peachtree Street, N.E., Suite 4000
Atlanta, Georgia 30308-3243
(404) 614-7400
(855) 889-4588 (facsimile)
dlevorse@hpylaw.com
mbarr@hpylaw.com

*Counsel for Defendant DR Horton, Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| BETTY GRENEKER and | ) | |
| GREGORY GRENEKER, | ) | |
| JOSH GRUNDNER and | ) | |
| CAROLINE GRUNDNER, | ) | |
| YAZMIN ROMAN and | ) | |
| RICARDO ROMAN-VAZQUEZ, | ) | |
| JENIFER CAMPBELL and | ) | |
| VICKAL CAMPBELL, | ) | |
| ROSEMARY PASTULA and | ) | |
| JOHN PASTULA, and | ) | |
| ANTHONY SNYDER, | ) | |
| | ) | |
| Plaintiffs, | ) | CIVIL ACTION FILE NO.: |
| | ) | |
| v. | ) | 4:24-cv-00283-WMR |
| | ) | |
| DR HORTON, INC., and | ) | |
| UPONOR, INC. | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above and foregoing

***Defendant's Brief in Support of Motion to Dismiss and to Compel Arbitration*** on

the following counsel of record by electronic filing:

Marc A. Wites, Esq.
Wites & Rogers
1055 Howell Mill Road, Suite 800
Atlanta, GA 30318
mwites@witeslaw.com
*Counsel for Plaintiffs*

Chuck M. Douglas, Esq.
Wakhisi-Douglas, LLC
1055 Howell Mill Road, Suite 800
Atlanta, GA 30318
cmdouglas@wd-law.net
*Counsel for Plaintiffs*

14

Howard Lieber, Esq.
Grotefeld Hoffman, LLP
311 S Wacker Drive
Suite 1500
Chicago, IL 60606
hlieber@ghlaw-llp.com
*Counsel for Uponor, Inc.*

This 4th day of December, 2024.

HAWKINS PARNELL & YOUNG LLP

*/s/ Matthew Barr*

303 Peachtree Street, N.E., Suite 4000
Atlanta, Georgia 30308-3243
(404) 614-7400
(855) 889-4588 (facsimile)
dlevorse@hpylaw.com
mbarr@hpylaw.com

Debra LeVorse
Georgia Bar No. 242229
Matthew Barr
Georgia Bar No. 039481

*Counsel for Defendant DR Horton, Inc.*

15