**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION**

|  |  |
|---|---|
| BETTY GRENEKER and GREGORY GRENEKER, JOSH GRUNDNER and CAROLINE GRUNDNER, YAZMIN ROMAN and RICARDO ROMAN-VAZQUEZ, JENIFER CAMPBELL and VICKAL CAMPBELL, ROSEMARY PASTULA and JOHN PASTULA, and ANTHONY SNYDER, <br><br> Plaintiffs, <br><br>    v. <br><br> D.R. HORTON, INC., and UPONOR, INC., <br><br> Defendants. | Civil Action No. 4:24-cv-00283-WMR |

**DEFENDANT UPONOR, INC.'S MEMORANDUM
OF LAW IN SUPPORT OF ITS MOTION TO
DISMISS AND TO COMPEL ARBITRATION**

Pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, Federal Rule of

Civil Procedure 12(b)(1),[1] other applicable law, and the written agreements between

---

[1] The Eleventh Circuit treats a motion to compel arbitration as a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction.  *See McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007).

the parties, Defendant Uponor, Inc. ("Uponor") respectfully submits this Memorandum of Law in Support of its Motion to Dismiss and to Compel Arbitration. Specifically, Uponor moves the Court to enter an Order dismissing the case and that:

(1) pursuant to 9 U.S.C. § 4 of the Federal Arbitration Act ("FAA"), compels Plaintiffs Betty Greneker, Gregory Greneker, Josh Grundner, Caroline Grundner, Yazmin Roman, Ricardo Roman-Vazquez, Jenifer Campbell, Vickal Campbell, Rosemary Pastula, John Pastula, and Anthony Snyder ("Plaintiffs") to arbitrate their claims pled in this case against Uponor on an individual basis pursuant to the arbitration clause contained in the binding express warranty ("Warranty") applicable to and governing the Uponor product at issue in this action—the potable water PEX plumbing pipe ("PEX"); and

(2) pursuant to 9 U.S.C. § 3 of the FAA, stays all proceedings in this action, including all discovery, until after said Plaintiffs have submitted their individual claims to arbitration and the arbitration proceedings have been completed.

## I. **INTRODUCTION**

In this action, Plaintiffs raise allegations concerning the purportedly defective design, construction, and sale of their homes, including allegations against Uponor that the plumbing pipes it manufactured were defective, have leaked, and have caused damage to Plaintiffs' individual properties. From these allegations, Plaintiffs

assert claims against Uponor for strict liability, breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, negligence, breach of contract, bad faith and stubborn litigiousness, and Deceptive or Unfair Practices in Violation of O.C.G.A. §10-1-370, *et seq*.

Plaintiffs' claims against Uponor expressly invoke, and indeed some are predicated upon, the Warranty Uponor provided which is applicable to and governs the PEX allegedly utilized in Plaintiffs' homes.  Nevertheless, Plaintiffs bring the claims against Uponor in this Court, rather than in binding arbitration as the very Warranty they expressly invoke requires.  Plaintiffs are the intended and legal beneficiaries of that Warranty.  By their own allegations, Plaintiffs assert claims under and seek to benefit from that Warranty.  Plaintiffs are, thus, bound by its terms, including its arbitration clause.

Consistent with the Warranty's clear, unambiguous language requiring arbitration, as well as with federal statutory and case law mandating the enforcement of arbitration provisions, Plaintiffs must be compelled to individually arbitrate their alleged causes of action against Uponor involving the PEX.

Accordingly, for these reasons, which are more fully described and established in more detail below, the Court should grant this Motion, dismiss the case against Uponor, compel Plaintiffs' claims alleged in the Complaint against

Uponor to arbitration, and stay the litigation as to Uponor until such arbitration has concluded.

## II.   STATEMENT OF FACTS

In their Complaint, Plaintiffs seek recovery for damages allegedly caused by the design, construction, and sale of their homes, including allegedly defective Uponor potable water PEX plumbing pipes. [2]  *See generally* **Exhibit 1**, Complaint. Specifically, Plaintiffs allege that "the Uponor Pipes have burst in all of the Plaintiffs' Homes, causing numerous leaks and significant water damage in Plaintiffs' Homes." *Id.* at ¶ 17.   Plaintiffs further allege that each Plaintiff's respective water damage is so significant it "damaged both the Plaintiffs' Homes and surrounding Neighboring Homes." *Id.* at ¶ 19.   Uponor denies all such allegations.

At all times, the express, written Warranty applied to and governed the Uponor PEX allegedly in Plaintiffs' homes.  The Warranty was continuously posted by Uponor on its website, and the Warranty was available to Plaintiffs at all relevant

---

[2] Collectively, Plaintiffs assert eight causes of action: strict liability, breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, negligence, breach of contract (as to D.R. Horton), breach of contract (as to Uponor), bad faith and stubborn litigiousness, and Deceptive or Unfair Practices in violation of O.C.G.A. §10-1-370, *et seq*.  *See* **Exhibit 1**, Complaint at ¶¶ 29-69. Plaintiffs further allege that they are entitled to consequential, compensatory, delay, treble, and punitive damages, as well as fees and expenses "at the maximum rate allowable by Georgia law." *Id.* at ¶¶ (b)-(f).

times.  Indeed, Plaintiffs were fully aware of the Warranty, such that they have invoked the Warranty in their Complaint.  *Id*. at ¶¶ 20-21, 36-48.

Among its terms, the Warranty contains a mandatory arbitration provision. This provision, and the Warranty generally, is binding upon "the owner of the applicable real property in the United States" containing Uponor PEX and it provides such owner with certain "exclusive remedies" in the event the owner claims the PEX "has failed or is defective."  **Exhibit 2** at p. 1, "Uponor, Inc. Limited Warranty" and p. 2, "Exclusive Remedies."  The relevant provisions state:

> **Warranty Claim Dispute Process:**
>
> In the event claimant and Uponor are unable to resolve a claim through informal means, the parties shall submit the dispute to the American Arbitration Association or its successor (the "Association") for arbitration, and any arbitration proceedings shall be conducted before a single arbitrator in the Minneapolis, Minnesota metropolitan area. NOTWITHSTANDING THE FOREGOING, NEITHER THE CLAIMANT NOR UPONOR, INC. SHALL BE ENTITLED TO ARBITRATE ANY CLAIMS AS A REPRESENTATIVE OR MEMBER OF A CLASS, AND NEITHER THE CLAIMANT NOR UPONOR SHALL BE ENTITLED TO JOIN OR CONSOLIDATE CLAIMS WITH ANY OTHER PARTIES IN ARBITRATION OR IN LITIGATION BY CLASS ACTION OR OTHERWISE.

*Id*. at p. 2, "Exclusive Remedies."  The Warranty also expressly disclaims all other warranties, express and implied:

> THIS LIMITED WARRANTY IS THE FULL EXTENT OF EXPRESS WARRANTIES PROVIDED BY UPONOR, AND UPONOR HEREBY DISCLAIMS ANY WARRANTY NOT EXPRESSLY PROVIDED

HEREIN, INCLUDING, WITHOUT LIMITATION, THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE WITH RESPECT TO THE PRODUCTS COVERED HEREUNDER.

*Id.*, "Miscellaneous."

## III.   ARGUMENT & CITATION OF AUTHORITY

### A.   Plaintiffs' Claims Must Be Submitted to Arbitration.

### 1.   The Federal Arbitration Act Governs the Arbitration Agreement.

The Federal Arbitration Act ("FAA") reflects a "strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution." *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) (the FAA embodies a "liberal federal policy favoring arbitration agreements"); *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985) (the FAA requires the courts to "rigorously enforce agreements to arbitrate.").

Here, the FAA—which governs disputes involving interstate commerce—is applicable on the face of the Complaint because Plaintiffs allege that Uponor, an Illinois corporation, manufactured PEX that was used in the Plaintiffs' homes that are in Georgia.  *See* **Exhibit 1**, Complaint at ¶¶ 1-6, 8, 12-15; *see Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 281 (1995).  Where parties to an arbitration agreement agree that their transaction involves interstate commerce and will be governed by the FAA, courts must enforce that stipulation and apply the FAA.  *Smith*

*v. Sanders Realty Holdings, LLC*, No. 1:20-cv-3617-ELR-CMS, 2021 WL 2651816, at *4 (N.D. Ga. Jan. 15, 2021), *report and recommendation adopted*, No. 1:20-CV-03617-ELR, 2021 WL 2651817 (N.D. Ga. Apr. 19, 2021) ("Where, like here, the intent of the parties indicates that arbitration would be governed by the FAA, courts will enforce the intentions of the parties.") (citing *Results Oriented, Inc. v. Crawford*, 245 Ga. App. 432, 436 (2000)).

Accordingly, the FAA governs enforcement of the Warranty's arbitration clause and provides that it "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.; *see also AT&T Mobility LLC v. Concepcion,* 563 U.S. 333, 344 (2011) ("The principal purpose of the FAA is to ensure that private arbitration agreements are enforced according to their terms." The FAA reflects Congress' strong federal policy in support of arbitration agreements, "requiring that [courts] 'rigorously enforce agreements to arbitrate.'" *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221 (1985) and *Moses H.*, 460 U.S. 1 at 24).

### 2. The Arbitration Agreement Is Valid and Covers the Claims Asserted

When analyzing whether to enforce an arbitration agreement under the FAA, the Court must assess whether: (1) there is a valid written agreement to arbitrate; (2) the dispute between the parties falls within the scope of the arbitration agreement;

7

and (3) the party asserting the claims has failed or refused to arbitrate the claims. *Lomax v. Woodmen of the World Life Ins. Soc'y*, 228 F. Supp. 2d 1360, 1362 (N.D. Ga. 2002).

As discussed immediately below, all three requirements are met here, thus, Plaintiffs are bound to the terms of the arbitration clause and must be required to submit their claims against Uponor to individual arbitration. 9 U.S.C. § 4 ("[U]pon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court *shall* make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." (emphasis added)); *Byrd*, 470 U.S. at 218 ("By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.").

**a.     Plaintiffs Admit That the Warranty is A Valid Written Agreement to Arbitration.**

On the face of their Complaint, Plaintiffs admit that the Warranty is a valid written agreement to arbitration. *See* **Exhibit 1**, Complaint at ¶ 20 ("Pursuant to the Defendants respective Agreements and Warranties with Plaintiffs, Defendants are obligated to repair defects in Plaintiffs' Homes, but have refused and failed to do."). Indeed, Plaintiffs themselves further seek to rely on it by asserting claims for breach of implied warranty of merchantability and fitness for a particular purpose against

Uponor. *Id.* at ¶¶ 36-48).[3]  This constitutes a legally binding, judicial admission that privity of contract exists between Plaintiffs and Uponor by virtue of the Warranty. Consequently, the Warranty constitutes a valid agreement to arbitrate between Plaintiffs and Uponor.

### b.      Plaintiffs' Claims Are Subject to the Warranty's Arbitration Agreement.

The United States Supreme Court has repeatedly held that the FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24–25.  Thus, "where [a] contract contains an arbitration clause, there is a presumption of arbitrability in the sense that [an] order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the

---

[3] Plaintiffs' invocation of the Warranty constitutes a legally binding, judicial admission that privity of contract exists between Plaintiffs and Uponor. *See All Barnes ex el. Gibson v. Medtronic, Inc.*, No. 1:20-CV-04310-JPB, 2021 U.S. Dist. LEXIS 159341, at *10 (N.D. Ga. Aug. 24, 2021) (finding that privity of contract must be established before a plaintiff may bring claims for breach of implied warranty) (citing *Cooksey v. Medtronic, Inc.*, 1:20-CV-00805, 2021 U.S. Dist. LEXIS 115388, 2021 WL 2481894, at * 4 (N.D. Ga. June 1, 2021)); *Best Canvas Prods. & Supplies, Inc. v. Ploof Truck Lines, Inc.*, 713 F.2d 618, 621 (11th Cir. 1983) (finding that as a "general rule," a party "is bound by the admissions in his pleadings."); *Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1178 (11th Cir. 2009) (Pleadings are judicially admitted facts that are "established not only beyond the need of evidence to prove them, but beyond the power of evidence to controvert them.").

arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs. v. Communs. Workers of Am.*, 475 U.S. 643, 650 (1986).

Here, there can be no dispute that the Warranty's arbitration clause covers the subject matter of this action. As described above, the Uponor Warranty specifically provides that "[i]n the event" Uponor and a property owner "are unable to resolve a claim" between them "through informal means" related to the performance of the PEX, then those "parties shall submit the dispute" to binding arbitration before the AAA. **Exhibit 2** at p. 2, "Warranty Claim Dispute Process." This language unambiguously covers all claims and disputes between Uponor and the Plaintiff property owners relating to their claims about the performance of the PEX installed in their properties.[4] That is particularly true where (a) the Warranty's arbitration clause does not exclude any claims from its scope; (b) the Warranty instead governs "any claims arising from breach of contract, breach of warranty, tort, or any other claim arising from the sale or use of Uponor's products"; and (c) the Warranty establishes a homeowner's "exclusive remedies" with respect to PEX that has

---

[4] Other courts agree that when construing statutes, "a" is synonymous with "any." *See In re Robinson*, 567 B.R. 644, 645 (Bankr. N.D. Ga. 2017) (finding the statute's chosen language used the more definite "the" instead of an indefinite "a" or "an"); *Hooks ex rel. NLRB v. Kitsap Tenant Support Servs.*m 816 F.3d 550, 558-559 (9th Cir. 2016) (holding that the use of the indefinite article "a" has a "generalizing force" and "is synonymous with" the word "any") (citing *In re Cardelucci*, 285 F.3d 1231 (9th Cir. 2002)).

allegedly "failed or is defective[.]" **Exhibit 2** at p. 2, "Warranty Claim Dispute Process," "Miscellaneous," "Exclusive Remedies." Here, Plaintiffs' claims specifically arise from the allegedly defective PEX used in their homes. *See* **Exhibit 1**, Complaint at ¶¶ 12-15. Therefore, their claims arise out of and relate to the Warranty and are subject to the arbitration clause therein.

Further, equitable estoppel compels Plaintiffs' claims to arbitration. Georgia law recognizes equitable estoppel "as an exception to the general rule that only the parties who agree to be bound by a contract's terms can enforce them." *Lawson v. Life of the S. Ins. Co.*, 648 F.3d 1166, 1172 (11th Cir. 2011). "Equitable estoppel allows a nonsignatory to an arbitration agreement to compel . . . a signatory to arbitrate under certain circumstances in which fairness requires doing so." *Id.* "A plaintiff's claims must directly, not just indirectly, be based on the contract containing the arbitration clause in order for equitable estoppel to compel arbitration of those claims." *Id.*; *Parm v. Natl. Bank of California, N.A.*, No. 4:14-CV-0320-HLM, 2015 WL 11605748, at *13 (N.D. Ga. May 20, 2015), *aff'd*, 835 F.3d 1331 (11th Cir. 2016).

Here, Plaintiffs' explicit invocation of the Warranty is the precise grounds for which they bring this action pursuant to Georgia's Right to Repair statute. *See* O.C.G.A. §8-2-38(b)(2); **Exhibit 1**, Complaint at ¶ 20 ("Pursuant to the Defendants respective Agreements and Warranties with Plaintiffs, Defendants are obligated to

repair defects in Plaintiffs' Homes, but have refused and failed to do so."). By their own allegations, Plaintiffs assert claims under and seek to benefit from the very Warranty that mandates arbitration. As the law requires, Plaintiffs are, therefore, bound by its terms, including its arbitration clause. *Developers Sur. & Indem. Co. v. Carothers Constr., Inc.*, No. 1:17-CV-1979-SCJ, 2018 WL 8996378, at \*3 (N.D. Ga. Feb. 27, 2018) ("Applying Georgia's equitable-estoppel doctrine to this case, [defendant] can compel [plaintiff] to arbitrate because [plaintiff] has brought a claim arising out of the underlying subcontract," therefore, "[p]laintiff is estopped from avoiding the arbitration provision because attempts to receive a benefit by asserting a claim dependent on the underlying subcontract.") (citing *Order Homes, LLC v. Iverson*, 300 Ga.App. 332, 685 S.E.2d 304, 310 (2009)) (holding that the plaintiff was estopped from avoiding a contract's arbitration clause because it brought claims arising out of the contract)); *Parm* at \*13 ("Clearly, plaintiff must rely on the terms of the written agreement in which the arbitration clause is contained because it is that agreement that contains the allegedly usurious interest provision upon which this law suit is based.") (quoting *Elder v. BMO Harris Bank*, No. CIV. JFM-13-3043, 2014 WL 1429334, at \*1 (D. Md. Apr. 11, 2014)).

### c. Plaintiffs Refused to Arbitrate Their Claims.

Plaintiffs refused to arbitrate their claims as required by the Warranty's arbitration clause, which provides explicit instructions about making a demand for

arbitration: "In the event claimant and Uponor are unable to resolve a claim through informal means, the parties shall submit the dispute to the American Arbitration Association or its successor (the "Association") for arbitration . . . ."

Here, Plaintiffs did not make any demands for arbitration as required by the Warranty but instead chose to commence this action. Therefore, by virtue of filing their Complaint, Plaintiffs have failed to arbitrate their claims. *See generally* **Exhibit 1**, Complaint; *see also Buchanan v. PruittHealth, Inc.*, No. 1:19-CV-1695-SCJ-CCB, 2019 U.S. Dist. LEXIS 183834, at *12 (N.D. Ga. July 19, 2019) ("Plaintiff refused to arbitrate by filing this lawsuit.") (citing *Goldberg v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 650 F. Supp. 222, 228 (N.D. Ga. 1986)); *Moreland v. Pruitthealth-Fairburn, LLC*, No. 1:21-CV-00256-AT-LTW, 2021 WL 4815214, at *4 (N.D. Ga. Mar. 9, 2021), *report and recommendation adopted*, No. 1:21-CV-0256-AT, 2021 WL 4815198 (N.D. Ga. Mar. 29, 2021) ("There is no evidence that Plaintiff made a demand for arbitration as required by the Arbitration Agreement. Plaintiff filed the present action . . . and, therefore, refused to abide by the terms of the Agreement.").

### 3.    The Warranty Mandates Individual Arbitrations.

Not only does the Warranty require Plaintiffs to arbitrate their claims against Uponor, but it also requires Plaintiffs to arbitrate them on an individual basis. The Warranty's arbitration clause contains an unambiguous waiver provision that

13

prohibits multi-plaintiff suits:

> NOTWITHSTANDING THE FOREGOING, NEITHER THE CLAIMANT NOR UPONOR, INC. SHALL BE ENTITLED TO ARBITRATE ANY CLAIMS AS A REPRESENTATIVE OR MEMBER OF A CLASS, AND NEITHER THE CLAIMANT NOR UPONOR SHALL BE ENTITLED TO JOIN OR CONSOLIDATE CLAIMS WITH ANY OTHER PARTIES IN ARBITRATION OR IN LITIGATION BY CLASS ACTION OR OTHERWISE.

**Exhibit 2** at p. 2, "Exclusive Remedies."  Federal courts, including this Court and the United States Court of Appeals for the Eleventh Circuit, have upheld arbitration clauses that require individual, nonclass arbitration of disputes.  *See In re Checking Account Overdraft Litig.*, 856 Fed. Appx. 238, 247 (11th Cir. 2021) (upholding the District Court's dismissal of a class pursuant to defendant's arbitration clause which required individual arbitration); *Kaspers v. Comcast Corp.*, No. 1:12-CV-01397-SCJ, 2013 WL 12177928, at *5 (N.D. Ga. Feb. 26, 2013) (granting defendant's motion to compel arbitration after finding that the arbitration clause did not permit claims to be arbitrated on a consolidated basis).

## B.    Upon Dismissal and Compelling Arbitration of Plaintiffs' Claims Against Uponor, the Court Should Stay This Action in Its Entirety.

Because Plaintiffs' claims against Uponor are subject to mandatory arbitration, this Court should dismiss Uponor and then stay all remaining proceedings in this action, including discovery, until after the claims against Uponor

14

have been submitted to arbitration and the arbitration proceeding has been completed. Indeed, Section 3 of the FAA requires a stay:

> Section 3 [of the FAA] provides that when claims are properly referable to arbitration, that upon application of one of the parties, the court shall stay the trial of the action until the arbitration is complete. 9 U.S.C. § 3. . . . [a] stay is mandatory upon a showing that the opposing party has commenced suit 'upon any issue referable to arbitration under an agreement in writing for such arbitration. . . .' Thus, the court may not deny a stay in such a situation.

*Alford v. Dean Witter Reynolds*, 975 F.2d 1161, 1164 (5th Cir. 1992).

## IV.    CONCLUSION

For the reasons discussed above, Uponor respectfully requests that the Court enter an Order that dismisses this action and compels Plaintiffs to arbitrate their claims pled in this case against Uponor on an individual basis in accordance with arbitration agreements they entered into with Uponor. Uponor further requests that the remaining proceedings in this action be stayed.

Respectfully submitted this 4th day of December 2024.

|  |  |
|---|---|
| | TROUTMAN PEPPER HAMILTON SANDERS LLP |
| 600 Peachtree Street, N.E. Suite 3000 Atlanta, GA 30308 Telephone:  (404) 885-3000 Facsimile:   (404) 885-3900 david.norden@troutman.com | */s/ David F. Norden* David F. Norden Georgia Bar No. 545647 *Attorneys for Defendant Uponor, Inc.* |

15

# **FONT CERTIFICATION**

Pursuant to Local Rule 7.1D, I hereby certify that the foregoing document was

prepared using Times New Roman 14-point type as provided in Local Rule 5.1.

*/s/ David F. Norden*
David F. Norden
Georgia Bar No. 545647

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 4th day of December 2024, I electronically filed the foregoing **DEFENDANT UPONOR, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS AND TO COMPEL ARBITRATION** with the Clerk of Court using the CM/ECF system and served all counsel of record with a copy via U.S. Mail with adequate first class postage affixed thereto as follows:

Chuck M. Douglas
WAKHISI-DOUGLAS, LLC
1055 Howell Mill Road, Suite 800
Atlanta, GA  30318
cmdouglas@wd-law.net

Debra E. Lavorse
HAWKINS, PARNELL & YOUNG, LLP
303 Peachtree Street, N.E.
4000 SunTrust Plaza
Atlanta, GA 30308
dlavorse@hpylaw.com

Marc A. Wites
Chuck M. Douglas
WITES & ROGERS
1055 Howell Mill Road, Suite 800
Atlanta, GA  30318
mwites@witeslaw.com
cmdouglas@wd-law.net

*Attorneys for Defendant D.R. Horton, Inc.*

*Attorneys for Plaintiffs*

*/s/ David F. Norden*
David F. Norden
Georgia Bar No. 545647

17